UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

JOSEPH V. BARILE, *also known as*
JOSEPH V. OLEJAK

        Defendant.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

NOV 13 2007

LAWRENCE K. BAERMAN, CLERK
ALBANY

1:06-MC-137
(LEK/RFT)

## DECISION AND ORDER

This matter comes before the Court following a Report-Recommendation filed on November 2, 2007, by the Honorable Randolph F. Treece, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 18).

Upon the letter request of Assistant United States Attorney Barbara D. Cottrell (Dkt. No. 19) and after careful consideration, the Court has decided to allow the Government to view the above-referenced Report-Recommendation, exclusive of portions redacted. As indicated in the attached version of the Report-Recommendation, the Court has redacted factual information made available by Defendant at the *in camera* hearing before Magistrate Judge Treece on September 27, 2007. The Court notes that it is necessary and appropriate to provide the Government with this redacted version of the Report-Recommendation in order to afford the Government a meaningful opportunity to file objections.

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED. R. CIV. P. 72(b), in compliance

1

with L.R. 72.1. In light of the fact that, until now, the Government has not viewed the Report-Recommendation issued on November 2, 2007, the Court grants both parties leave to file any such objections until Tuesday, November 26, 2007.

Accordingly, it is hereby

**ORDERED**, that a **redacted** version of the **Report-Recommendation** (Dkt. No. 18) is affixed to this Order and so docketed; and it is further

**ORDERED**, that both parties be advised that the deadline for filing objections, if any, to Magistrate Judge Treece's Report-Recommendation of November 2, 2007 (Dkt. No. 18) is hereby set as **Tuesday, November 26, 2007**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order and the attached **redacted** version of the Report-Recommendation on all parties.

**IT IS SO ORDERED.**

DATED:   November 9, 2007
         Albany, New York

_____
HONORABLE LAWRENCE E. KAHN
United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                        Petitioner,

- v -

                        Civ. No. 1:06-MC-137 (LEK/RFT)

JOSEPH V. BARILE, also known as
JOSEPH V. OLEJAK[1]

                        Respondent.

RANDOLPH F. TREECE
United States Magistrate Judge

## CONFIDENTIAL REPORT-RECOMMENDATION

On November 14, 2006, the Commissioner of the Internal Revenue Service (IRS) filed a Petition to judicially enforce an IRS Summons which was served upon Respondent to appear, testify and, produce books, records, and documents related to his tax liability for the taxable periods of 1994 to 2000. Dkt. No. 1, Pet. By an Order, dated August 29, 2007, this matter was referred to this Court to conduct an *in camera* hearing and then issue a report and recommendation. Dkt. No. 16. As directed, this Court held an *in camera* Hearing on September 27, 2007.

### I. BACKGROUND

As mentioned above, the IRS served a Summons upon Respondent for him to testify and produce records and data relating to his tax liability for the years 1994 to 2000. Respondent appeared at the IRS office on January 25, 2006, but did not supply any books nor records. Two months later, on March 22, 2006, Respondent sent the IRS a locked metal box, without the key, purportedly containing Respondent's business and personal records, but said box was returned along

---

[1] The Petition before this Court identifies the Respondent as Joseph V. Barile, but the case caption notes that Barile is also known as Joseph V. Olejak. Barile advised the Court that Olejak is his wife's maiden name and he prefers to be referred to as Olejak. We are not completely certain if he has legally changed his name to Olejak, therefore, for the purposes of this Report and Recommendation, we will refer to Barile/Olejak as Respondent.

with a letter stating that Respondent had not complied with the Summons. On April 5, 2006, Respondent appeared before IRS Officer Terry Cox and broadly asserted his Fourth and Fifth Amendment rights and as to every inquiry. Thereafter, the IRS filed a Petition to enforce the January 9, 2006 Summons. Dkt. No. 1, Pet.

Based upon the Petition, the Honorable Lawrence E. Kahn, Senior District Judge, issued an Order to Show Cause (Dkt. No. 2) to which Respondent replied with an Affidavit (Dkt. No. 4) arguing that the IRS Summons had no force nor effect. A Hearing was scheduled for February 2, 2007, but was adjourned to March 24, to permit Respondent an opportunity to comply with the Summons and resolve the issue. Eventually, that Hearing was reconvened on April 11, 2007.

Because Respondent refused to provide the requested information and had not complied meaningfully with the IRS Summons, on April 11, 2007, Judge Kahn stated that it would issued an Order directing Respondent to comply with the Summons within fourteen (14) days of the Order. That Order was issued on May 18, 2007. Dkt. No. 12. Rather than comply with the May 18th Order, Respondent filed a belated Motion to Quash. Dkt. No. 13, Mot. to Quash, dated May 30, 2007. Shortly thereafter, Respondent filed a Clarification Motion stating, *inter alia*, that he "intends to comply with the May 1[8], 2007 order but is unable to determine how he failed to comply in order to comply again." Dkt. No. 14, Mot. of Clarification, dated June 8, 2007, at p. 2. In response, the Government-Petitioner framed the legal issue and factual context for the District Court as to the Respondent-taxpayer's right to assert a his Fifth Amendment Privilege not to incriminate himself during a tax proceeding or interview. The Petitioner also suggested an *in camera* review of Respondent's business records to determine the Privilege's applicability thereto. Dkt. No. 15, Gov't Response, dated Aug. 13, 2007. Accordingly, Judge Kahn issued the August 29th Order directing

Respondent to appear before this Court for an *in camera* proceeding in which he would be required to describe any documents he refuses to produce and questions he refuses to answer on the basis of his Fifth Amendment Privilege. Then, accordingly, this Court was required to determine "whether his silence is justified." Dkt. No. 16 at p. 4 (citation omitted).[2]

### 1. September 27, 2007 *In Camera* Hearing

As noted above, Respondent appeared at the *in camera* Hearing.

---

[2] Additionally, by this Order, Senior District Judge Lawrence E. Kahn instructed the parties on the applicable law. In sum, a person summoned to answer questions before the IRS is entitled to assert his Fifth Amendment rights but this right does not necessarily extend to business documents voluntarily prepared. For this reason, the Fifth Amendment Privilege "cannot be invoked broadly but applies only on a document-by-document or question-by question basis." Dkt. No. 16, at pp. 2-3 (citations omitted). Therefore, the taxpayer must state with specificity why each piece of information is privileged. *Id.* at p. 4; *see also infra* Part II - Legal Discussion.

-4-

---

[4] In this context, this inference of a waiver of the Fifth Amendment Privilege is derived from this Circuit's long held two prong test: "(1) [i]f the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver." *Lopez v. City of New York*, 2007 WL 228150, at *7 (E.D.N.Y. July 31, 2007) (quoting *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981)).

## II. LEGAL DISCUSSION

The Fifth Amendment provides, in part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. The Fifth Amendment

Protection against self-incrimination, "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosure which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972); *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998) (quoting *Kastigar*). A dangerous and injurious disclosure could result if the answer "would add to the sum total of the government's case against him, which is the threshold showing of potential incrimination." *United States v. Edgerton*, 734 F.2d 913, 921 (2d Cir. 1984) (quoted in *AAOT Foreign Assoc. Technostroyerexpoert v. Int'l Dev. and Trade Servs. Inc.*, 1999 WL 970402, at *3 (S.D.N.Y. Oct. 25, 1999)). Stated another way, could the disclosure "furnish a link in the chain of evidence to prosecute him for a crime[.]" *Hoffman v. United States*, 341 U.S. 479, 486 (1951); *United States v. Cianciulli*, 2002 WL 1484396, at *2 (S.D.N.Y. July 10, 2002) (citations omitted). If a person has "reasonable cause to apprehend that answering a question will provide the government with evidence to fuel a criminal prosecution," he may invoke his Fifth Amendment right to decline to answer. *Lopez v. City of New York*, 2007 WL 228150, at *6 (E.D.N.Y. July 31, 2007) (quoting *Osrecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d at 306). In order to invoke the Fifth Amendment, "[t]he danger of self-incrimination must be real, not remote or speculative" and to the extent that the danger "is not readily apparent . . . the burden of establishing its existence rests on the person claiming the privilege." *Estate of Fisher v. Comm'r of Internal Revenue Serv.*, 905 F.2d 645, 649 (2d Cir. 1990) (citations omitted). In those circumstances where the danger is not readily apparent, the judge's perception of the facts come into play as he assesses the credible basis of the party's invocation of the right; in doing so, the court must balance the basis in such a way as to not place too great a burden upon the explanation as

Generally, the Fifth Amendment does not protect business and personal documents especially those that are voluntarily prepared, because their creation was never compelled. But there may be a compelled testimonial aspect to producing documents under the "act of production" doctrine and the Fifth Amendment may be applicable, when an individual is being compelled "to produce documents where the production could implicitly communicate incriminating facts, such as the admission that 'papers existed, were in [production party's] possession or control, and were authentic.'" *United States v. Cianciulli*, 2002 WL 1484396, at *2 (quoting, *inter alia*, *United States v. Hubbell*, 530 U.S. 27, 36-37 (2000) (alteration in original)). "While the contents of voluntarily prepared documents are not privileged, the act of producing them in response to a subpoena may require incriminating testimony in two situations: (1) 'if the existence and location of the subpoenaed papers are unknown to the government'; or (2) where production would 'implicitly authenticate' the documents." *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993). An illustration of this doctrine is when the IRS knows that an accountant had prepared work papers or spreadsheets.

There is yet one other permutation of the Fifth Amendment Privilege doctrine to be considered and that is the "required record exception." When a person is required by law to create and maintain certain records and is asked to produce those records, the Fifth Amendment protection against self-incrimination is unavailing. "To qualify as a required record, a document must satisfy a three-part test: (1) it must be legally required for a regulatory purpose, (2) it must be of a kind that the regulated party customarily keeps, and (3) it must have assumed 'public aspects' which render

it analogous to public documents." *United States v. Cianciulli*, 2002 WL 1484396, at *3 (citations omitted). Documents that fall under this rubric would be W-2 forms, tax returns, 1099 statements, and employee earning statements. *Id.*

### III. ANALYSIS

Based upon the record before this Court, and the totality of the circumstances in this matter, Respondent has established to the satisfaction of this Court that he harbors a reasonable apprehension that his answers to questions related to whether he is a wage earner, his gross income and the source of that income would conceivably heighten the probability of a criminal prosecution. Respondent's tax liability has been calculated at $179,789.11, of which he has not made any effort to pay. He has not filed tax returns since 1994. Under these circumstances, the Respondent could be criminally prosecuted for tax evasion and willful failure to file a tax return and pay taxes.

Respondent has made a plausible argument that providing the source of income for 2005 will have a relation back effect as to prior tax years, which could trigger an investigation and furnish a link for a criminal prosecution.

In this respect, Respondent has properly invoked his Fifth Amendment Rights.

Generally speaking, the "at production" doctrine could have conceivably been recognized here to protect him from implicitly communicating incriminating facts such as the admission that such papers exist, they are in his possession, and are authentic. There is nothing in the record to indicate that the Government knows whether said documents and records exist and, if so whether they are in his possession, thus for our purpose they are deemed unknown. They only way the IRS could confirm their existence is by compelling Respondent to reveal those facts. In this respect, Respondent's silence would have been justified to some degree but for one salient fact: Respondent did not comply with the District Judge's August 29, 2007 Order. Dkt. No. 16.

The August 29th Order is very clear as to what was required of the Respondent and what would be the attending consequence if he failed:

> 1) The Fifth Amendment cannot be invoked broadly, but applies only on a document-by-document or question-by-question basis. Order, at p. 2;
> 2) To receive the protection of this privilege, Respondent is directed to (1) **describe each document** and question he refuses to answer and **produce each document** and answer each question in an *in camera* proceeding . . . *Id.* at p. 3 (emphasis added);
> 3) Failure to turn over that information determined in an *in camera* proceeding to not be protected under the Fifth Amendment . . . will . . . result in a warrant for Respondent's arrest . . . *Id*;
> 4) Accordingly, in that instance, Respondent must comply with the earlier orders of this Court and produce ALL information requested by the IRS. *Id.* (emphasis in original);
> 5) He is required to produce **any documents** for which he seeks to assert privilege for *in camera* review . . . *Id.* at p. 4 ( emphasis added);

-10-

> 6) Should Respondent **fail to comply with this order and either produce all documents** sought in the summons over which privilege is asserted . . . a warrant for Respondent's arrest will be issued. . . *Id.* (emphasis added);

Dkt. No. 16.

What is pivotal in this matter are the specific orders that Respondent continues to ignore. *See id.*, at p. 1 ("Respondent has still failed to comply with the IRS Summons, or the Order of the Court."). And court orders are not be blithely ignored for any reason. Even this Court forewarned Respondent of the repercussions if he failed to share his documents with the IRS as previously directed. Had Respondent produced these documents for the Court's review, and considering our observations as stated above, he could have possibly gained a favorable disposition over some if not all of his documents. Yet, without his compliance, there is no mechanism for us to discern what documents would fall under the "required record exception" or those that would be cloaked by the "at production" doctrine. Moreover, the Fifth Amendment Privilege cannot be ritualistically asserted to innocuous questions such as "are you married' and "do you have children." *Osrecovery, Inc. v. One Groupe Int'l Inc.*, 262 F. Supp. 2d at 307. Furthermore, the Privilege is only personal and cannot be asserted for another's benefit, such as Respondent's clients. *AAOT Foreign Econ. Ass'n Technostroyerexport v. Int'l Dev. and Trade Servs.*, Inc., 1999 WL 970402, at *6 (citing *United States v. Miranti*, 253 F.2d 135, 141 (2d Cir. 1958) for the settled proposition that "[i]t is **danger of self-incrimination**, rather than the nature of the proceeding, or the character of the litigant, which is decisive in determining whether the Fifth Amendment has been properly invoked") (emphasis added); *see also* U.S. CONST. amend. V ("no person . . can be compelled [.]").

Respondent is a highly intelligent, resourceful, and articulate man. He truly understands the parameters and dictates of the law as supported by his arguments during the *in camera* proceedings

-11-

neither oblique nor vague in terms of understanding the perils that confront him. To feign ignorance of or plead a lack of understanding as to directions of the Order and the scope of the Petition would be mere sophistry. By all appearances, failure to produce the records for this Court to review was contemplated, though ill-advised.[6] Attempting to narrow the scope of review and couch the issue as to only one interview event, albeit recent, was calculating. Even if Respondent was to argue he was concerned that presented documents would eventually be revealed, such argument would not be sufficient to disregard a court order.[7] Safety features could have been and, in fact, were in place to protect those documents if indeed they would have been considered protected. *See AAOT Foreign Econ. Assoc. Technostroyerexport, v. Int'l Dev. and Trade Servs, Inc.*, 1999 WL 970402, at *9-10.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Respondent be directed to provide answer and related documents to inquiries pertaining to affiliate businesses; and it is further

**RECOMMENDED**, that Respondent's answer to inquiries regarding being a wage earner, his gross income, and the sources of that income should receive Fifth Amendment protection; and it is further

**RECOMMENDED**, that by virtue of Respondent's failure to produce documents as directed

---

[6]

[7] Notwithstanding the findings as stated above, this Court stated on the record that Respondent may "have complied in good faith." To put this comment in context, the Court was referring to Respondent's appearance before the Court and that he should not be held in contempt for any adjournment of the *in camera* hearing. In this regard, by appearing he complied, in part, with the August 29th Order.

-12-

by the Order, dated August 29, 2007, any assertion of a Fifth Amendment Privilege over them should be deemed waived; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Confidential Report-Recommendation upon the Respondent only; and it is further

**ORDERED**, this Confidential Report-Recommendation and the Exhibits be filed under seal.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: November 2, 2007
      Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

-13-